The next case on the call of the docket this afternoon is Agenda No. 5, Case No. 127732, People of the State of Illinois v. Samuel Sauls. James Henry Waller. Thank you. Good afternoon, Your Honors. Counsel. May it please the Court, my name is James Waller with the Office of the State Appellate Defender, and it's my pleasure to represent Samuel Sauls today. With the Court's indulgence, I intend to stand on the arguments in the briefs regarding the first issue, the sufficiency of the evidence argument. And I appreciate the opportunity to talk to you about the second issue, the fact that the trial court erred when it granted the motion to quash the subpoena duties tecum without conducting the in-crammer review of the requested documents. The question today is narrow and straightforward. The U.S. Supreme Court in Pennsylvania v. Ritchie established a procedure for in-crammer review of these types of documents, which has been relied on and incorporated into Illinois law. That procedure does not require any heightened or particularized showing of materiality or relevance beyond what is already built into subpoena duties tecum law in Illinois. And regardless of what standard is used to evaluate such a showing, Sam Sauls, through trial counsel in this case, met that standard. The case should therefore be remanded back to the trial court to conduct that in-crammer review of the documents, and if anything is in there that could have changed the outcome of the trial, a new trial should be ordered. Finally, even if this Court takes the State's invitation to announce a new formulation of what that standard should be, the case should still be remanded back so that the parties can have an opportunity to argue about it and the Court can evaluate it. Now, Pennsylvania v. Ritchie held the defendants in a criminal case have a due process right to potentially exculpatory evidence in the State's possession, but not an unbridled right of going through these statutorily protected documents. So in order to strike that balance, they came up with this procedure that says you have to subpoena these documents subject to the laws on subpoenas that already exist, and then if the subpoena is not quashed for those already built-in controls, then the trial court is supposed to conduct this in-crammer review and only release information that is responsive and relevant to the parties. This Court in People v. Bean ratified that holding. In that court, the defendant had subpoenaed the records. In that case, the trial court did the in-crammer review and then held arguments on what information should be relevant and released, and this trial court called that the proper procedure. This procedure already works. The appellate courts have cited it approvingly. In the Third District case discussed in the briefs, People v. Escorino, the defendants sought the exact same type of information, controlled by the exact same statute, and when the trial court quashed the subpoena, the Third District remanded it for that in-crammer review to take place. Mr. Saul is asking for the exact same result and the exact same legal question. Counsel? Yes, Your Honor. Doesn't Ritchie say that a defendant cannot require the trial court to search through the file without first establishing a basis for the request? Yes, Your Honor. That is what the footnote in Ritchie says. And that footnote, that footnote kind of comes in three parts. So the footnote comes right after the central holding in Ritchie. The central holding says he's entitled to in-crammer review. Then there's this footnote. The footnote, the first part of the footnote says the Commonwealth says that Ritchie is not entitled to disclosure because he didn't make a particularized showing of materiality, of what he's seeking or how it would be material. So after just having given its holding, they're entertaining and then dispensing with this argument from the State. They're saying that that type of thing is contextually not necessarily. Then it moves into the second part of that footnote. Ritchie, of course, may not require the trial court to search through the file without establishing a basis for his claim that it contains material evidence. And it gives a seasight to Valenzuela Bernal, saying. Well, counsel, are you skipping over that portion in the parentheses, the mere possibility that an item of undisclosed information might have helped the defense does not establish materiality? I'm sorry, Your Honor. I couldn't hear the first part of that. Are you skipping over the portion of the language that's in parentheses after that sentence about would be material? Then in parentheses, don't they say the mere possibility that an item of undisclosed information might have helped the defense does not establish materiality in the constitutional sense? Well, and you don't get to make just a vague assertion. That information could have. Does it say that in the decision as well? It probably does. I'm sorry. I don't have that exact language in front of me. But, yes, the defendant can't just make a vague assertion that there's information in there that could have helped me. He has to give a basis for why he believes that. In this case, the basis was there's possible prior inconsistent statements and there's evidence of interest or bias between this witness and my client. And just for completion's sake, though, the third part of that footnote then goes on to say, although the obligation to disclose exculpatory material does not depend on the presence of the specific request, we note that the degree of specificity of his request may have a bearing on the trial court's assessment on remand. So the last section is saying that any lack in detail is really just going to hurt Richie because the court's not going to be able to give him the responsive information. But the basis in this case, the basis for materiality, which is all that he's required to demonstrate, is the same thing that's already controlled by subpoena And people be Tchaikovsky, in language taken from U.S. v. Nixon, so the Rehnquist court in Richie was fully aware of the subpoena requirements. The documents have to be evidentiary and relevant. The request has to be made in good faith and it's not a phishing expedition. So you have to be able to give the basis. And the basis of specificity is necessary. Well, I think that not much more than just the theory of how this information could be useful. So in Valenzuela-Bernal, they're saying there was two missing witnesses. It was a confrontation issue or, excuse me, a compulsory process issue. And the defendant didn't even give a reason as to why these two witnesses were necessary. In this case, it would not have been enough for Sahls to come in and say, I want to see that information. I think it might be helpful. He has to come in and say, it has prior inconsistent statement and it shows the interest in bias. And it's particularly, that basis is good enough, particularly in this case where this witness, the credibility of this witness is important not only to the jury's determination of what happened, but even as a gatekeeper for inadmissible evidence under 11510. The court has to be able to decide whether or not the content and credibility of the witness are such that they can allow the evidence in. But what was the level in Ritchie of the materiality versus the level of the materiality in this case? I believe that it was far lower. I believe, Your Honor, that the representations made in this case were more specific and direct. I believe that in Ritchie, they were just alleging the possibility of the names of witnesses, of potential witnesses. But it doesn't mention the names in this case. I'm sorry? It doesn't mention the names in this case. Well, in this case, Your Honor, the witness is known and it has to do with the credibility of this particular witness and prior inconsistent statements this witness made and evidence of bias and interest that this witness has. And it's particularly problematic in this case where there's a demonstrated history of conflict between this witness and the defendant that reached a boiling point kind of right before some of these disclosures were made. So the context of this case, and this is always going to be a fact-dependent investigation, but the context of that representation made it sufficient in this particular case. We can see that it's still a workable test that you have to enunciate the basis and explain why you need these things. If we imagine if Officer Smith's only ties to an investigation was that she drove a purported controlled substance, the State Police Crime Lab in Morton. There's no allegation that she coerced a confession or had any interaction with the defendant. Defense counsel subpoenas her disciplinary records and excessive complaints, excessive force complaints. There's no basis for that. There's no relevant basis for that. Defense counsel can't come in with any theory that would make that relevant, and the court would not be in error to refuse to do an in-camera review in that circumstance. But they could make the exact same request of the exact same type of protected information for Officer Thompson, who elicited a confession about intent to distribute that same controlled substance. So it's always going to be contextually significant not only what basis is elucidated, is spoken by defense counsel, and what the evidence is in relation to this case. Do you agree with the standard that was set forth in Bellis-Weidel and Bernal, that the proponent must make some plausible showing of how the evidence would have been both material and favorable to his defense? Well, I think that the – I think that that would be – well, that would be a good first step. I mean, if that was – if that was the holding in Ritchie – and I don't think that it tracks directly through. I don't think that the Ritchie court is saying because of what happened in Bellis-Weidel and Bernal, this is the exact same situation. Ritchie is saying that just like in Bellis-Weidel and Bernal, you have to give some reason as to why this evidence is important, and that's all that it asks for. So I don't think that the Rehnquist court in Ritchie is going to be introducing a limitation on the right that it just announced in a footnote, by a seasight to a case that was involving another constitutional principle. Would you agree that the setting of the standard, whatever the standard is, is a question of law, but then when we apply that standard to any situation, including this one, it would be an abuse of discretion? Yes, I think it would be an abuse of discretion. That certainly makes sense. It would be – because it would rely on the particular facts and factors of the case. I don't think – I don't think abuse of discretion is the appropriate standard here because none of the parties believe that they were arguing towards that type of specific of a standard. Again, the showing that was made in this case was superior to the showing that was made in Ritchie. So Ritchie is not discussed at the trial court, of course, in this case, but we have to assume that they were making the arguments towards the law as it was understood at that time. In the showing here, you said it's greater than Ritchie here. It is. But it's much less than Escanara here, correct? I mean, Escanara involved the defendant and the victim. Right. Right. Well, in this case, it involves the complaining witness and possibly the same victim. We don't know. We don't know. It doesn't involve the defendant at all as far as we know. That's correct. So it involves the victim's mother. Right. That's correct. And it may involve the victim. We don't know who the possible victim is. If the Court had done the in-camera review and announced why it was granting or not granting the request, maybe we would have that information. And that's why – and Ritchie spoke to the impossibility of setting too high of a standard for something like this. If the parties don't know – I mean, again, the timing of this, these – the reports, the unfounded reports were from fall of 2018, which was right in the middle of contemporaneous of this investigation. So I think that the allegations of the abuse may have happened sometime in 2017. Some of the disclosures happened over 2018. And it's going to trial through 2019. In the middle of that, there's an investigation possibly regarding the same victim involving the State's chief witness, the chief witness not only for occurrence issues but the gatekeeper of that 11510 evidence. So that's enough – that's enough to get in-camera review. There's enough of a nexus to the relevant facts that the Court needs to consider in order to get in-camera review, at least in this case. Well, this case is all about credibility of witnesses, right? I'm sorry, Your Honor? This case is all about credibility of witnesses. That's right. And so FactFinder heard all the evidence and decided one way. You're saying certain witnesses should not have been allowed to testify or should have been? Well, it's possible that the – it's possible that there's evidence in those – in those reports that may have been admissible, or at least led to admissible material. So we're talking about a discoverability standard, not admissibility. But it's possible that those reports contained information that defense counsel could have used to impeach those witnesses or could have affected the Court's determination of her credibility for allowing in her representation of what those 11510 disclosures could have been. So it would have been important for the Court or possibly the jury to hear, depending on what the contents were and what the theories were. We don't know anything about any of those reports. It's just a speculation, right? Correct. That's right. And that's why – and I think that's why Rischi cautions against setting too high of a bar. It talks about how it's impossible to know. Both sides are working in the dark, and we can't expect anybody to come in and say, Carnac, the Magnificent, and guess what's in these reports. Even Johnny Carson opened the envelope and did his on-camera review to find out what's in there. And that's all that we're asking for in this case. The Court wouldn't even be able to – even if – even if he comes in – if Saul as a trial counsel comes in and makes a very detailed representation, it doesn't do a lot of good because the Court can't evaluate how likely that is to be true until it does the in-camera review. So even in this case, the prosecutor says, well, we don't think that there's any Brady material in there, but we haven't looked at it. Okay. Then that representation is not very good. So when the defense counsel comes in and says, we're certain that it's in there, and the State comes in and says, we're certain that it's not, setting a standard that high doesn't – doesn't help anybody, doesn't help uncover the truth, because we need to have in-camera review of that – of that – of those documents. It's just like anything. Any case where the Department of Children and Family Services is involved, the defense should be allowed to give every statement they have taken, right? No, I don't think so, Your Honor. Again, it's going to be contextually dependent, just like – just like the disciplinary records of that police officer were. In this case, where the reports happened contemporaneous, possibly with at least either the abuse or any reporting of the abuse, if either happened, and it involved possibly the same child, and it certainly involved the State's chief witness, I think that that's a basis for how the evidence may be material. So how would you phrase the rule? Well, I think that Richie phrased the rule. I think the Rehnquist Court phrased the rule just fine. You have to demonstrate a basis for relevance. The basis for relevance was potential exculpatory information, inconsistent statements, and a demonstrated history of bias between these two witnesses. So I don't think any formulation, any change to the law needs to be made, and the State hasn't made any good argument as to why being is not workable. With that in mind, Mr. Stahls asked that the case – this Court remand the case so that the in-camera review can be conducted. And even, again, as I said, if the Court does announce a new standard for this type of thing or clarifies the standard, the case should still be remanded back so that the parties can speak to that standard, and the trial court can make an evaluation based on this Court's decision. So if there's no other questions, I'll see you back in a moment.  Thank you, Mr. Waller. Thank you. Mr. Mitchell-Ness. Good afternoon, Your Honors. Assistant Attorney General Mitchell-Ness on behalf of the people of the State of Illinois. Could you speak up, please? Yeah, sorry. I'll raise this.  And go right into due process. As I understood Palin's argument today, he largely agrees with the State that some showing needs to be made before records can be reviewed in camera by a trial court. If that's the case, then the State and the defendant largely don't disagree about anything. What the State disagreed with and where I think the original briefing started was the 3rd District's opinion in Esquireno, which concluded essentially that Ritchie did not require that showing before an in-camera review should be conducted, but instead Esquireno ruled that any time a subpoena goes out for privileged documents, an in-camera review is automatic. That's what the people would push back on and disagree with. And I believe that that reading of Ritchie, especially Ritchie's footnote 15, makes sense and has been adopted by an overwhelming amount of State and Federal courts to read it. And it's really clear language. It says that the defendant cannot require a trial court to conduct an in-camera review of a privileged document without first showing some basis of materiality. And as this Court alluded to, the Ritchie standard, or at least one that was contemplated in Ritchie, was this plausible showing standard. And I believe that that is a completely workable standard, although somewhat vague. Courts deal with those kinds of standards all the time. That's a case-by-case determination based on the facts, based on the arguments before it. Counsel, in this case, though, there's allegations of bias. The other parents are step-parents. So isn't that enough? So that would be sort of the second part of this. The first part is, you know, whether Ritchie and footnote 15 allow the trial court to withhold the in-camera review until the showing is made. Your question is going to end at the second issue, which is, was that showing made here? I personally don't think so. I think the trial court was correct in finding that that showing had not been made. I would point the Court towards this Court's previous decision, Foggy, in which it dealt with privileged communications made to a rape crisis counselor. And I left the actual language back there, but the Foggy Court ends up saying, so the argument made below at the trial court was that, you know, I think that the victim may have made some contradictory statements to the rape crisis counselor, and I'd like the Court to conduct in-camera review to determine if that's the case. And this Court very clearly said, the vague assertion that the victim may have made statements to her therapist that might possibly differ from the victim's trial testimony does not provide a sufficient basis to justify ignoring the trial court's order. So there's clearly something more that you need to do than just use some Brady-related buzzwords. You can't just say bias. You can't just say contradictory statements. You need to tie them to the case and tie them to why you believe what's in that record meets that standard. So there's sort of the Ritchie, you know, if we call it the Ritchie standard, there's two aspects to it. There's one that has to be a plausible showing, which is, you know, sort of a very low-level belief that this record exists and what you think is in the record exists. But the second part is that you have to make a plausible showing that the information is actually material to your defense, not just, as the defendant alluded to, relevant. The standard is actually materiality, which is, you know, underbrand. How low is the low-level? The courts that have applied Ritchie to require a preliminary showing of, you know, of materiality before, have grappled with that. They've certainly understood it to be a lower standard, and they've taken into account the fact that this is all pretrial. This is without a defendant's, most of the time, without a defendant's knowledge of what's in a record. So it is very case-by-case, I suppose, you know, without trying to get into too many hypotheticals about what happened in this case. I think it would be helpful to think a little bit about what, you know, the words used here and maybe what could have changed the outcome below. You know, he says the defendant's counsel below argued that, you know, there was interest and bias on behalf of the mother, but doesn't connect to bias against defendant. Why would there have been bias against defendant in those records? Doesn't say why they think that there's potentially bias in those records. And I think all those, you need to connect the dots. You need to be able to say, you know, I believe that because, let's say, you know, for instance, let's say that the defendant had filed that report against the victim's mother, and that's why they believed there was bias, and, you know, eventually the mother was trying to retaliate against the defendant for making a false report against her or something. You know, you need to say that stuff. You need to say, you know, you have to give your plausible explanation of why you think what's in there is in there. I don't think you need to make, you know, the courts have rejected the words. You don't have to make a particularized showing, because that would be a little too much, and, you know, you just don't know what's going to be in the record. Do you agree that this is an abuse of discretion standard that we're looking at here as to whether or not that level has been met? Right. Answering the second question of whether the argument below met that standard, I believe that would be an abuse of discretion standard. Did the trial court, in fact, abuse its discretion here by not exercising its discretion? No, I do not believe so. Didn't the trial court here say that under the Act these reports are confidential, and I don't see any basis to release them based on impeachment? The trial court certainly did not call this a Ritchie hearing, but I don't believe that that's not what occurred. You know, we presume that the trial courts understand and apply the law. Ritchie has been established law since. Well, we presume that unless the record shows otherwise. So my question to you is based on this record. Right. Show me where the trial court exercised its discretion. Well, I would point to two things in the sort of preliminary background leading to this hearing about, leading to the motion to quash the hearing. Originally, the defendant filed its, or sought these records and filed a Rule 412H motion, which is, as this Court is well aware, is a discretionary disclosure additional discovery tool that a defendant can use. And a Rule 412H discretionary disclosure can be granted upon showing a materiality to the preparation of the defense. So that's where this sort of started, was this idea that I think I need that because it's important to my defense. It turned into, you know, the state, the county attorney said, well, we're not able to get these records, so you need to subpoena them. So then we go through the subpoena process. We end up with the subpoena du subtecum and a motion to quash the subpoena. And it is true that the state relied on confidentiality, but as indicated in the record, the defendant was well aware that it needed to make a relevant argument. And they attempted to do so. They just didn't sufficiently do so. And so the trial court did not say on the record, I do not find that these are relevant, or I do not find that you've made a plausible showing of materiality. But I believe that that's what occurred, and I believe everybody knew that that's what was occurring, particularly considering the fact that this has been an established procedure for quite some time. I guess I'll just say one thing. Let me ask, except for the idea about confidentiality, what other factors did the trial judge consider when saying he's not giving them that information? Well, he considered the argument made before it, which was, you know, admittedly a short argument, as often as you all are aware that these records can be. But he considered the argument before it, and the defendant made this argument for materiality. They made the argument for why they needed this document. The court heard that argument and decided, you know, you do not need the document. And it, yes, relied on, in some ways, relied on confidentiality of the report, but that's also part of this test. The other half, you know, we're trying to weigh due process interest against a state's right to keep something confidential. And so, you know, that's a relevant portion of this test, is that this statute actually is attempting to keep these things confidential. You've not made a sufficient showing to overcome that confidentiality. And so I do not find that I, you know, the trial court did not find that it needed to conduct an in-camera review. So the analysis, you combine the confidentiality statement and an assumption. I think that's, you know, if this court really dives into Ritchie, that's, sorry, if this court reads Foggy,  there's this unanswered question in Ritchie about whether a statute that prescribes an absolute bar to the dissemination of records can, you know, can overcome a defendant's due process right to the materiality, to material information. And the Ritchie court explicitly said that it's not answering that question, that it was only answering the question before it, which was a statute with more exceptions to confidentiality. The Foggy court a year later kind of grappled with what that meant, what Ritchie was trying to say, in that the Ritchie court, you know, the Foggy court said, look, Ritchie considered this statute with several exceptions to confidentiality. We're considering a statute with almost no exceptions to confidentiality. But it didn't end there. It didn't just say, well, because that statute is fully confidential, no in-camera review would ever be granted. Instead, it went through a detailed analysis of what the Foggy defendant, what the argument that the Foggy defendant made to the trial court was, and it repeatedly said, you know, the defendant made a vague assertion. The defendant didn't connect its case to why it believed that this rape crisis counselor testimony was material to it. And it repeatedly said that considering the legislature's clear indication, you know, the essentially extra indication that rape crisis counseling victims deserve confidentiality in their records, combined with the defendant's lack of any plausible showing that the records were necessary, that the privilege was not required to be breached in that case. So I think that is certainly an interesting question for the application of this rule going forward, as to what happens when a statute is more explicitly confidential than the one we have here. And, you know, following the Foggy court's sort of discussion of this, I think it does play into the actual due process requirement or the trial court's assessment of what due process requires. Counsel, this is just an aside. What do you think caused the trial court's change of heart? Because after all, when the records initially weren't disclosed, the trial court said, fine, we'll do a subpoena dupas tecum. And then there was no objection to that. And there didn't seem to be any objection to the trial court reviewing them in camera. So what? I would disagree with the last portion, that there was no objection to the trial court reviewing them in camera. The state, when it – the state essentially acted here as a third party. You had the – you know, the county attorney was the prosecuting authority. The state came in and argued the motion to quash. It's a third party. DCFS is a third party. So what the state ultimately said is that, you know, you should quash this because of our privilege. If you're not going to, then we can do it in camera review. Right. You have an objection to it in camera. Which is exactly what the procedure that I would advocate for here, that if a motion to quash is not granted because, you know, because the plausible showing was made, then we go to in-camera review. And then the trial court conducts the in-camera review, determines what's material to a case, and then disseminates what it believes is material. So you're of the opinion that the trial court ultimately concluded that the necessary showing had not been made and thus declined to do the in-camera review? Correct, yeah. I think that's enough points. If there's no other questions, I would ask that the court uphold the decision of the appellate court. Thank you. Thank you, Mr. Ness. Mr. Waller. Thank you. And I apologize, Justice Holder-White. I see the section you were talking about as far as the parenthetical. They did say the mere possibility that an item of undisclosed information might have helped the defense does not establish materiality. That's correct. In fact, I would add on to that the fact that in this case we had more than just, again, more than just a vague assertion that the undisclosed information might have helped the defense. They gave – Let me refresh my memory on the showing that your client made. I mean, the representations your client made as to what this evidence would show. Trial counsel just said that it would demonstrate interest and bias to the witness and might contain inconsistent statements, prior inconsistent statements. It could and it might. That's correct, which I think is all that's contemplated by Richie. Again, everybody understands that they're going to be negotiating and advocating in the dark here. So it's not just a vague assertion that the information might be helpful,  and, again, the context matters because everybody knew this was going to be a 11510 case. Everybody knew that her credibility was going to be determinative on the lion's share of the state's evidence coming in on this case. So what might be a vague assertion in one case might not be a vague assertion in another case. In this case, it was contextually relevant, and everybody involved in that court that day knew why prior inconsistent statements and the credibility of this witness, particularly any bias against Mr. Sahls, was going to be material, was certainly going to be relevant. And I agree with the question earlier about regarding the abuse of discretion. The court did abdicate any discretion in this case. I believe that what the trial court, what Judge Defana said was that I believe the Department is correct about these records being confidential. That was the end of the analysis. It was not part of this two-part Ritchie analysis. Is it confidential, and now what are your interests to compete against that? They said, well, and, again, the Department, the Department, the only objection they made was that this is privileged information, that this is confidential information. They didn't come in and object under any of the conditions that control subpoenas decis tecum, that this was not relevant, not material, couldn't lead to discoverable evidence, was overly burdensome, all these policy arguments weren't made, simply that the information was confidential. So the court gave no discretion here. I think that the Foggy Court, to jump to Mr. Ness's comments regarding Foggy, it wasn't just that, I agree, it wasn't just entirely that. This Court did say that the records in Foggy are not part of Ritchie analysis because there's an absolute bar for these type of records. We don't even have to worry about the language in Foggy. But they also said that a, excuse me, the defendant did not even allege the existence of discoverable evidence, and that ended up being a controlling issue here. Here, I think they clearly did allege the existence of material evidence. So we are beyond a vague assertion. We are beyond a vague assertion that undisclosed information might help the defense or that it might be helpful. He gave the bases for his belief that the information would be material and relevant. That's all that's required by Ritchie. So with that in mind, we ask the Court to remand the case for the performance of the in-camera review. And again, please, Your Honor. In the exercise of discretion, the evidence was submitted by a trial court. Right. What would you require a trial court to say or do to show that the trial court exercised their discretion? Well, some, I mean, some recognition that Ritchie was a controlling case and that it was analyzing the question under the rubric of Ritchie would be, would demonstrate that discretion had been exercised. It's always going to be a case-by-case determination. You know, there are certain things where we assume that the Court has balanced certain evidence and aggravation mitigation, even though they don't have to announce every single thing. There are some assumptions. In a case like this, the Court came out and said, I believe the Department has the better of this in that the records are confidential, so I'm granting the motion to quash. The Court announced explicitly that they didn't exercise their discretion, at least under the appropriate rubric. So otherwise, I hesitate to give an overwhelming 10,000-foot view of what the evidence of an exercise of discretion would be, because it's going to be case-specific. But all I can tell you is it didn't happen in this case. Does anybody have a follow-up? All right. Thank you very much. Thank you for your time. Thank you. Case number 127732, People of the State of Illinois v. Samuel Sahls, will be taken under advisement as Agenda No. 5. I want to thank you, Mr. Waller and Mr. Ness, for your arguments this afternoon.